INDEPENDENT WAREHOUSES, INC., A CORPORATION OF THE STATE OF NEW YORK, AND PENNSYLVANIA COAL COMPANY, A CORPORATION OF THE COMMONWEALTH OF PENNSYLVANIA, AND ERIE RAILROAD COMPANY, A CORPORATION OF THE STATE OF NEW YORK, INTERVENING PARTIES, PROSECUTORS, v. WILLIAM SCHEELE, RECORDER OF THE TOWNSHIP OF SADDLE RIVER, AND THE TOWNSHIP OF SADDLE RIVER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

JAMES THOMPSON, PROSECUTOR, v. WILLIAM SCHEELE, RECORDER OF THE TOWNSHIP OF SADDLE RIVER, AND THE TOWNSHIP OF SADDLE RIVER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

Argued October 4, 1944—Decided January 19, 1945.

Before Justices CASE, BODINE and PORTER.

For the prosecutors Independent Warehouses, Inc., and James Thompson, *Collins & Corbin* (*Robert J. Bain*, of counsel).

For the prosecutors Pennsylvania Coal Company and Erie Railroad Company, *Hobart, Minard & Cooper* (*Duane G. Minard* and *G. Addison Hobart*, of counsel).

For the defendants, *Chandless, Weller & Kramer* (*Ralph W. Chandless*, of counsel).

The opinion of the court was delivered by

Porter, J. The writs of *certiorari* in these two cases bring before us for review the convictions of the prosecutors Independent Warehouses, Inc., and James Thompson, its employee, for violation of section I of an ordinance of the defendant municipality on a charge of storing coal in a warehouse without having first obtained a license therefor. The ordinance in question provides for the licensing of the business of conducting the storage of personal property in a warehouse for hire and provides a penalty for violation of the said ordinance of imprisonment not exceeding ninety days or a fine not exceeding $200, or both. It is not denied that Independent Warehouses, Inc., was operating such a business on premises within the municipality at storage yards commonly called Coalberg and that Thompson was employed by it.

Independent Warehouses, Inc., is a corporation of New York, authorized to do business in New Jersey, and is engaged in storing goods for hire in ten states, including the warehouse at the Coalberg plant. It has operated this plant since June 20th, 1939, in the storage of coal shipped in interstate commerce, for the benefit of and at the expense of Erie Railroad Company, and has shipped over that road exclusively as an in-transit facility for interstate shipments of coal.

The Pennsylvania Coal Company is a corporation of Pennsylvania where it mines and sells anthracite coal. It holds title to the Coalberg property.

The Erie Railroad Company is a common carrier by railroad engaged in interstate commerce. Independent Warehouses, Inc., and Pennsylvania Coal Company are subsidiary corporations of Erie Railroad Company, the capital stock in both corporations being wholly owned by it. The Pennsylvania Coal Company and Erie Railroad Company were allowed to intervene in these proceedings. For the purpose of this litigation they have been, and will be, treated as one entity.

It is the practice of the prosecutors to store large quantities of anthracite coal in their yard at Coalberg in the defendant municipality. This yard has a capacity of storing about 400,000 tons of coal. It is convenient, if not indeed neces-

sary, in marketing this coal and transporting it to the ultimate consignee to have a place of storage in which to accumulate it during the slack season, it not being possible or practical to deliver it directly from the mines at the peak season of its need by the consumer.

The proofs show that the Erie Railroad Company and Pennsylvania Coal Company have entered into a written contract which provides that coal be shipped to and stored at Coalberg as a public facility for in-transit storage of coal under railroad tariffs under supervision of an Erie agent stationed at Coalberg, who collects freight and storage charges. The purpose of this arrangement is to provide a reserve supply of coal in large quantities produced in slack season and made available when needed in the winter season and to facilitate the financing of the purchase when desired by negotiation of warehouse receipts. It also appears that shippers of coal require these facilities, that it is necessary for carriers to provide them and that the Federal Act to Regulate Commerce provides that they be furnished by the carriers upon reasonable request of shippers. The fact with respect to this coal is that it is all owned by shippers or consignees and is shipped in interstate commerce from the mines in Pennsylvania to the ultimate destination in, or beyond, the New York metropolitan area with in-transit stopover privileges at Coalberg. None of this coal is sold at Coalberg. All of it is transported in and out of Coalberg by rail.

The controversy between these parties is over the right of the municipality to levy taxes on this coal. This yard is operated as a warehouse, and the taxation of the coal was set aside by this court and our opinion was affirmed by the Court of Errors and Appeals in *Pattison & Bowns, Inc.,* v. *Saddle River Township,* in 129 *N. J. L.* 135; *affirmed,* 130 *Id.* 177. It was there held that coal stored in fenced in piles on an otherwise open tract of land equipped with machinery to handle the same is within the purview of *R. S.* 54:4–3.20 (exempting from taxation goods stored in warehouse).

The attempt was then made to accomplish the same result by the adoption of the ordinance under which the prosecutors were convicted. This ordinance provides for the licensing

of warehouses and fixing the license fee at three-quarters of a cent per square foot of storage space. It appears that the space occupied by stored coal in this warehouse on that basis of licensing fees would bring in a revenue of about $11,000 a year, a sum approximately equivalent to the amount of the tax previously and unsuccessfully levied on the coal.

The prosecutors raise many questions in their attack on the legality of this ordinance, the principal ones being that the coal in reality is being taxed by the license fees, whereas it is exempt from taxation, because it is in warehouse as held by the *Pattison & Bowns* case, *supra;* also it is exempt from taxation because of its character as interstate commerce, also because of an unreasonable, arbitrary, capricious and discriminatory exercise of the licensing power.

We think these arguments are well made and that the ordinance is invalid. The prosecutors were engaged in a legitimate business, and it seems to us that the enactment of this ordinance was not a reasonable exercise of the police power for the promotion of public health, safety or general welfare but was an arbitrary attempt to raise revenue by discriminating against the business of prosecutors in the guise of license fees, and to thus secure from it a sum equivalent to taxes which would accrue, were the property not exempt. Compare *Resciniti* v. *Board of Commissioners of Belleville,* 117 *N. J. L.* 1; *Vassallo* v. *Orange,* 125 *Id.* 419; *New Jersey Good Humor, Inc.,* v. *Bradley Beach,* 124 *Id.* 162; *Gurland* v. *Kearny,* 128 *Id.* 22; *Passaic* v. *Paterson Bill Posting Co.,* 72 *Id.* 285; *O'Mealia Outdoor Advertising Co.* v. *Rutherford,* 128 *Id.* 587; *The Great A. & P. Co., Inc.,* v. *Camden,* 122 *Id.* 47; *Giant Tiger Corp.* v. *Camden,* 122 *Id.* 240; *American Grocery Co.* v. *New Brunswick,* 124 *Id.* 293; *affirmed,* 126 *Id.* 367.

This business was exclusively interstate. It did not cease to be such by reason of the interruption of the shipment for storage purposes at Coalberg. The facts in the instant case distinguish it from *Lehigh and Wilkesbarre Coal Co.* v. *Junction,* 75 *N. J. L.* 68; *affirmed,* 75 *Id.* 922. In this case the taxation of coal was sustained because the coal was not subject to interstate commerce, as its destination was in this

state where the tax was levied. It was stored here indefinitely until sold. In the instant case the purpose of the in-transit storage was for the economic reasons stated. Coalberg was not its destination. Its journey was simply interrupted for the purpose of storage and not for sale. It being a subject of interstate commerce, it is within the exclusive jurisdiction of Congress and the Interstate Commerce Commission. It may not be interfered with by the imposition of this license fee, which we think was upon the occupation or privilege of carrying on such interstate commerce. Compare *Erie Railway Co.* v. *The State,* 31 *Id.* 531; *West Jersey and Seashore Railroad Co.* v. *Lake and Risley Co.,* 105 *Id.* 314; *United States* v. *Pennsylvania Railroad Co.,* 242 *U. S.* 208; *New Jersey Bell Telephone Co.* v. *State Board of Taxes and Assessments,* 280 *Id.* 338.

' For these reasons the ordinance will be set aside, and the convictions under review will be reversed.